STATE OF NORTH CAROLINA v. BILLIE JOYCE FREDELL

No. 7218SC778

(Filed 29 December 1972)

1. Infants § 11— child abuse statute — conduct made punishable

To convict a parent of child abuse under G.S. 14-318.2, it is necessary that the State prove only one of three separate and distinct acts or courses of conduct: that the parent, other than by accidental means, (1) inflicted physical injury upon the child, (2) allowed physical injury to be inflicted upon the child, or (3) created or allowed to be created a substantial risk of physical injury upon the child.

2. Criminal Law § 1; Infants § 11— child abuse statute — severability of provisions — vagueness of one provision

Where defendant's case was submitted to the jury only on the issue of whether defendant actually inflicted her child's injuries, defendant could not complain of unconstitutional vagueness in the provision of the child abuse statute making it a criminal offense to create or allow to be created a substantial risk of physical injury upon a child since provisions of that statute are severable. G.S. 14-318.2.

3. Criminal Law § 33— child abuse — evidence of permanency of injuries — admissibility as showing seriousness

In a child abuse case where the jury was instructed that defendant could be found guilty only if found to have inflicted serious injury upon the child, evidence as to the permanency of some of the child's injuries was competent as tending to establish the seriousness of the injuries.

State v. Fredell

**4. Criminal Law § 97— testimony on redirect examination — admissibility for clarification**

Testimony by a physician on redirect examination in a child abuse case which tended to clarify some of the evidence that had been presented on direct examination and also some of the evidence elicited on cross-examination was properly admitted.

**5. Criminal Law § 43— introduction of photographs — procedure for admission into evidence**

Where the record showed that certain photographs were marked for identification as State's exhibits, were properly authenticated and were used by a witness to illustrate his testimony, the photographs were received into evidence, though the record was silent as to whether the solicitor ever formally offered them into evidence.

APPEAL by defendant from *Exum, Judge,* 1 May 1972 Criminal Session of Superior Court held in GUILFORD County.

Defendant appeals from a conviction in Superior Court under a warrant charging her with inflicting serious physical injury on her two-year-old son, in violation of G.S. 14-318.2. Judgment was entered imposing an active prison sentence.

Only the State offered evidence. Its evidence tends to show that on 4 October 1971, the infant was carried by defendant and her husband to the emergency room of Cone Hospital in Greensboro. The child was barely breathing and was in circulatory collapse or profound shock. His condition at that time was described as moribund, meaning "a state close to death." Several of the child's front teeth were missing; his abdomen was distended; there was swelling about his abdomen and arms, and there were a number of bruises about his abdomen, head and extremities. X-rays revealed a linear fracture of the skull of fairly recent origin, a fracture of the eleventh rib, and fractures of the bones in both arms. Some of the fractures appeared to be recent and others appeared to have occurred several months previously. In the opinion of an orthopedic surgeon who testified for the State, the older fractures received no medical attention before the child was admitted to the hospital on 4 October 1971.

Four physicians testified for the State and their testimony tends to show that the child's injuries resulted from severe trauma and could not have been sustained in the course of normal child play. Two physicians diagnosed the condition of the child as that of a "battered child." Battered was described

as a term meaning the most extreme form of child abuse, characterized by multiple injuries in different states of healing.

A physician attempted to establish a history upon the child's admission to the hospital. The parents told him that the child had a growth problem and fell frequently. He asked them directly why they struck the child. Defendant replied that they did not because they loved the child. He then asked if anyone else might have struck their child. The parents mentioned a baby-sitter, but admitted that the child had not been exposed to a baby-sitter in some four or five months.

On 8 October 1972, defendant talked with a Greensboro detective, after having been first advised of her constitutional rights and having executed a written waiver thereof. Defendant stated to the detective that she had a temper and quite often got mad and whipped the child with a lady's plastic belt. She started the whippings when the child was about a year old. When questioned as to why she administered the whippings, defendant stated that the child cried a lot and would often crawl to the bathroom, play in the commode and drink water from it. Defendant denied that her husband had ever whipped the child and stated that she had admitted to her mother-in-law that she knew she had whipped the child too hard. Her mother-in-law had replied, "You'd better watch it." Defendant stated that only she and her husband had been caring for the child for the two months preceding the interview. He had been cared for by baby-sitters for a few hours from time to time. When defendant would pick up the child from the custody of the baby-sitters, there would be no bruises or marks about him.

*Attorney General Morgan by Assistant Attorney General Hensey for the State.*

*Wallace C. Harrelson, Public Defender, Eighteenth Judicial District, and Vaiden P. Kendrick, Assistant Public Defender, Eighteenth Judicial District, for defendant appellant.*

GRAHAM, Judge.

Defendant moved in District Court, and again in Superior Court, to quash the warrant on the grounds that certain portions of G.S. 14-318.2 are unconstitutionally vague, uncertain and indefinite. The denial of this motion is asserted as error.

G.S. 14-318.2 provides:

"Sec. 14-318.2. *Child abuse a general misdemeanor.*—
(a) Any parent of a child less than 16 years of age, or any
other person providing care to or supervision of such child,
who inflicts physical injury, or who allows physical injury
to be inflicted, or who creates or allows to be created a
substantial risk of physical injury, upon or to such child
by other than accidental means is guilty of the misdemeanor
of child abuse."

[1, 2] In order to convict a parent of child abuse under the
statute quoted above, it is necessary that the State prove only
one of three separate and distinct acts or courses of conduct;
to wit, that the parent, by other than accidental means, (1)
inflicted physical injury upon the child; (2) allowed physical
injury to be inflicted upon the child; or (3) created or allowed
to be created a substantial risk of physical injury upon the
child. Defendant attacks only the portion of the statute making
it unlawful to create or allow to be created a substantial risk
of physical injury. She argues that the word "substantial" has
a "veritable multitude of meanings and shades of meaning" and
that the term "substantial risk" is so elusive that a person of
ordinary intelligence would be required to guess at its meaning.
We note in passing that in two recent cases, a New York
appellate court held that an identical phrase used in a penal
statute was not unconstitutionally vague and indefinite. *People
v. Lucchetti,* 305 N.Y.S. 2d 259, 33 A.D. 2d 566 (1969), and
*People v. Nixon,* 309 N.Y.S. 2d 236, 33 A.D. 2d 403 (1970).
However, the question is not presented here because the case
was submitted to the jury only on the issue of whether defend-
ant actually inflicted the child's injuries. This is illustrated
by the following mandate given to the jury in the court's
charge:

"Now, members of the jury, I instruct you finally
that if you find from the evidence in this case and beyond
a reasonable doubt, the burden being upon the State to so
satisfy you, that the defendant, Billie Joyce Fredell, is the
mother of Kelly Joe Fredell, a child, and that Kelly Joe
Fredell on or about October 4, 1971, and before that time
was a child less than sixteen years of age, and that the
defendant, Billie Joyce Fredell, inflicted serious injuries on
that child; that is to say, she inflicted injuries which
caused severe and massive bruising and hematomas and

fractures of both arms and skull and, members of the jury, if you further find that these injuries were inflicted by the defendant by other than accidental means as I have defined that term to you, then, members of jury, it would be your duty to return a verdict of guilty as charged in this case. If you fail to so find or have a reasonable doubt as to any one or more of these necessary things, then you would give the defendant the benefit of that doubt and find her not guilty."

Ordinarily an appellate court will not undertake to determine whether a statute is unconstitutional except with reference to the ground on which it is attacked. *Martin v. Housing Corp.*, 277 N.C. 29, 175 S.E. 2d 665; 16 Am. Jur. 2d, Constitutional Law, § 114. The provision of the statute making it a criminal offense to create or allow to be created a substantial risk of physical injury upon a child may be severed from the other provisions of the statute without affecting the sufficiency of the latter to accomplish the statutory purpose. Therefore, even if there is merit in defendant's contention that the phrase "substantial risk" is unconstitutionally vague, and we do not hold that there is, she has no grounds for complaint.

[3] Defendant contends that evidence tending to show that some of the child's injuries were permanent in nature was incompetent and should have been excluded. We disagree. Evidence as to the seriousness of the injuries allegedly inflicted by defendant was essential since the jury was instructed that defendant could be found guilty only if found to have inflicted *serious* injury upon the child. Evidence that some of the injuries were permanent tended to establish that they were serious and it was relevant for that purpose.

[4] One of the physicians who testified for the State was allowed to give his opinion on redirect examination that the injuries he had described could not have been caused by a fall from a bed. He was also permitted on redirect examination to define "a battered child syndrome." Defendant contends this constituted new evidence and should have been excluded. In our opinion, the testimony tended to clarify some of the evidence that had been presented on direct examination and also some of the evidence elicited on cross-examination. Even if the evidence is regarded as new matter, it was not error for the court to allow it, absent an abuse of discretion. See 7 Strong,

N. C. Index 2d, Trial, § 14. No abuse of discretion has been shown.

[5]   Defendant complains that certain photographs were shown to the jury without having been introduced into evidence. The record indicates that the photographs in question were marked for identification as State's exhibits, were properly authenticated, and were used by a witness to illustrate his testimony. While the record is silent as to whether the solicitor ever formally offered them into evidence, it does show that defendant's counsel stated, "objection to the introduction of these pictures as being too inflammatory." The court overruled this objection and instructed the jury that the photographs were offered into evidence solely for the purpose of illustrating the witness's testimony and for no other purpose. We hold that this constituted receiving the photographs in evidence.

Defendant's remaining contention relates to the admission of testimony of physicians, over objection, that in their opinion the child was suffering from a malabsorption syndrome and from a blizzard syndrome. There was evidence that child abuse can cause a malabsorption syndrome and that the blizzard syndrome is a component of "battered child syndrome." We find the evidence competent.

No error.

Judges CAMPBELL and BROCK concur.